# EXHIBIT 3

CHEE MARKHAM & KATO
GREGORY K. MARKHAM (3453-0)
gmarkham@cheemarkham.com
KEITH K. KATO (5320-0)
kkato@cheemarkham.com
2700 American Savings Bank Tower
1001 Bishop Street
Honolulu, Hawaii 96813
Telephone: (808) 523-0111

MAYER BROWN LLP
BRONWYN F. POLLOCK (*pro hac vice application forthcoming*)
bpollock@mayerbrown.com
JILLIAN C. JOSEPH (*pro hac vice application forthcoming*)
jjoseph@mayerbrown.com
333 S. Grand Avenue, 47th Floor
Los Angeles, California 90071
Telephone: (213) 229-9500

MARK R. TER MOLEN (*pro hac vice application forthcoming*)
mtermolen@mayerbrown.com
MATTHEW C. SOSTRIN (*pro hac vice application forthcoming*)
msostrin@mayerbrown.com
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 782-0600

Attorneys for Defendant Spectrum Oceanic, LLC

## UNITED STATES DISTRICT COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| MONICA I. EDER et al., | NOTICE OF REMOVAL |
| Plaintiffs, | Case No. 1:23-cv-459 |
| v. | Hawaii State Court Case No. 1CCV-23-0001045 JPC |
| MAUI ELECTRIC COMPANY, LIMITED et al., | |
| Defendants | |

### NOTICE OF REMOVAL

Defendant Spectrum Oceanic, LLC ("Spectrum"), by and through counsel, hereby gives notice of removal of this action, pursuant to 28 U.S.C. §§ 1332(d), 1369, 1441(e), 1446, and

1

1453, from the Circuit Court of the First Circuit, State of Hawaii, to the United States District Court for the District of Hawaii.[1]

## PRELIMINARY STATEMENT

1. Plaintiffs seek to hold Defendants liable for the Lahaina Fire on August 8, 2023. Plaintiffs assert claims on behalf of themselves and a broad, worldwide putative class consisting of "[a]ll persons and entities who suffered (1) real property loss, (2) personal property loss, (3) business loss, and/or (4) personal injury as a result of the Lahaina Fire that started on August 8, 2023." Exhibit B, Second Am. Compl. ("SAC") ¶ 154. Plaintiffs also seek to represent two worldwide subclasses—an "Economic Loss and Property Damage Subclass" and a "Personal Injury and Wrongful Death Subclass." *Id.* ¶¶ 155-56.

2. Federal court jurisdiction over this action is proper pursuant to the Class Action Fairness Act, ("CAFA"), 28 U.S.C. § 1332(d), and the Multiparty, Multiforum, Trial Jurisdiction Act ("MMTJA"), 28 U.S.C. §§ 1369, 1441(e). CAFA "provides the federal district courts with 'original jurisdiction' to hear a 'class action' if the [putative] class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000.'" *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (quoting 28 U.S.C. §§ 1332(d)(2), (d)(5)(B)). MMTJA provides federal district courts with "original jurisdiction of any civil action involving minimal diversity between adverse parties that arises from a single accident, where at least 75 natural persons have died in the accident at a discrete location." 28 U.S.C. § 1369(a).

---

[1] 28 U.S.C. § 1446(a) requires only that Spectrum plausibly allege the requirements for federal jurisdiction; a removal notice "need not [offer] evidentiary submissions." *Dart Cherokee Basin Operating Co., LLC v. Owens,* 574 U.S. 81, 84 (2014).

## BACKGROUND

3. Plaintiffs originally filed this action on August 12, 2023 in the Circuit Court of the First Circuit, State of Hawaii, bearing Case No. 1CCV-23-0001045 JPC.

4. On October 13, 2023, Plaintiffs filed their Second Amended Complaint ("SAC"). Plaintiffs' prior complaints asserted claims against Maui Electric Company, Limited, Hawaiian Electric Company, Inc., Hawaii Electric Light Company, Inc., and Hawaiian Electric Industries, Inc. (collectively, "Hawaii Electric") and the County of Maui (the "County"). The SAC added claims against (i) Hawaiian Telcom, Hawaiian Telecommunications, Inc., and Hawaiian Telcom, Inc. (collectively, "Hawaii Telcom") and Spectrum[2]; (ii) Trustees of the Estate of Bernice Pauahi Bishop (operating under the registered trade name Kamehameha Schools), Peter Martin & Associates and related individuals and entities, and JV Enterprises, LLC (collectively, the "Private Landowner Defendants"); and (iii) the State of Hawaii, the Hawaii Housing Finance and Development Corporation, and the Hawaii Department of Land and Natural Resources (collectively, the "State Landowner Defendants").

5. Plaintiffs allege that the Lahaina Fire had a single "Area of Origin" at or around Hawaii Electric's "Pole Number 7A" near the intersection of Lahainaluna Road and Ho'okahua Street in the vicinity of the Lahaina Intermediate School. SAC ¶¶ 12, 110, 115-16, 135-36. Plaintiffs allege that Pole Number 7A snapped and fell to the ground at around 3:00 a.m. as a result of high winds, and that when Pole Number 7A fell, it caused power lines between Pole Numbers 24 and 25 to fall. *Id.* ¶¶ 135-39. Plaintiffs contend that Hawaii Electric restored power to the lines around 6:10 a.m., igniting a brush fire. *Id.* ¶¶ 139-41. Plaintiffs allege that although the Maui Fire Department responded and declared the brush fire contained around

---

[2] Plaintiffs also named Charter Communications Holding Company, LLC, Charter Communications Holding, LLC, Charter Communications, LLC, and Charter Communications Operating, LLC. On October 24, 2023, Plaintiffs voluntarily dismissed these Charter entities without prejudice.

9:00 a.m., the fire flared up at around 4:45 p.m. and spread "at a critically fast rate" to the town of Lahaina. *Id.* ¶¶ 108, 111-14.

6. Plaintiffs allege that Defendants played various roles in purportedly causing the Lahaina Fire and that the "combination" of their alleged actions "all contributed to cause" the fire. SAC ¶ 8. In particular, Plaintiffs allege that: (i) Hawaii Electric failed to replace old wooden power poles that were unable to withstand high winds, failed to deenergize its power lines despite high-wind warnings, and improperly restored power to downed lines (SAC ¶¶ 4, 101-06, 121-25, 139); (ii) Hawaii Telcom and Spectrum had licenses to use Hawaii Electric's poles and destabilized the poles with their own cables (*id.* ¶¶ 5, 129-30, 136); (iii) the Private and State Landowner Defendants allowed invasive, non-native vegetation to accumulate and overrun the land where the fire started and spread (*id* ¶¶ 6, 96-100, 131); and (iv) the County failed to implement reasonable, non-costly wildfire mitigation measures before the Lahaina Fire and failed to sound sirens warning Lahaina of the fire (*id.* ¶¶ 7, 132-33).

7. Plaintiffs assert claims for negligence (Count I, ¶¶ 169-87, against Hawaii Electric, Hawaii Telcom, Spectrum, and the Private Landowner Defendants), gross negligence (Count II, ¶¶ 188-235, against all Defendants), private nuisance (Count III, ¶¶ 236-82, against Hawaii Electric, Hawaii Telcom, Spectrum, and the Private Landowner Defendants), inverse condemnation (Count IV, ¶¶ 283-98, against Hawaii Electric, Hawaii Telcom, and Spectrum), ultrahazardous activity (Count V, ¶¶ 299-301, against Hawaii Electric), and injunctive relief (Count VI, ¶¶ 310-16, against all Defendants).

8. Plaintiffs assert claims on behalf of themselves and a putative, worldwide "Liability Class" consisting of: "All persons and entities who suffered (1) real property loss, (2) personal property loss, (3) business loss, and/or (4) personal injury as a result of the Lahaina Fire that started on August 8, 2023." SAC ¶ 154.

4

9. The SAC also identifies a worldwide "Economic Loss and Property Damage Subclass," consisting of "[a]ll persons who suffered economic loss and property damage, including loss or damage to real and personal property and business losses, as a result of the Lahaina Fire that started on August 8, 2023," and a worldwide "Personal Injury and Wrongful Death Subclass," consisting of "[a]ll persons who suffered personal injuries as a result of the Lahaina Fire that started on August 8, 2023, and the personal representatives, survivors, and beneficiaries of the estates of all persons killed as a result of the Lahaina Fire." SAC ¶¶ 155-56.

10. Two other putative class actions also arising out the Lahaina Fire were recently removed to the United States District Court for the District of Hawaii. *See Naki v. State of Hawaii*, Case No. 1:23-cv-00435-JAO-WRP (D. Hawaii); *Burnes v. Hawaiian Elec. Co., Inc.*, Case No. 1:23-cv-00452-LEK-RT.

## **REMOVAL IS PROPER UNDER THE CLASS ACTION FAIRNESS ACT**

11. Removal of this action is proper pursuant to CAFA because, upon information and belief, "the class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000.'" *Standard Fire*, 568 U.S. at 592 (quoting 28 U.S.C. §§ 1332(d)(2), (d)(5)(B)).

**A. The Class Action And Numerosity Requirements Are Satisfied.**

12. Plaintiffs purport to bring this lawsuit as a class action on their own behalf and on behalf of all others similarly situated. SAC ¶ 1. Class action litigation is permitted by Hawaii R. Civ. P. 23. Accordingly, this case is a "class action" within the meaning of CAFA because Plaintiffs purport to bring it "under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

5

13. The putative class has more than 100 members. Plaintiffs allege that "[t]he proposed Liability Class consists of thousands of putative members who have suffered economic losses, personal injuries, or both," and that "thousands of putative class members comprise the proposed Economic Loss Subclass and Personal Injury Subclass." SAC ¶ 160; *see id.* ¶ 2 (Plaintiffs bring this lawsuit on behalf of "thousands of people").

14. Accordingly, this action satisfies the requirement for removal that "the number of members of all proposed plaintiff classes in the aggregate" is equal to or greater than 100. 28 U.S.C. § 1332(d)(5)(B).

**B.     The Minimal Diversity Requirement Is Satisfied.**

15. This Court possesses "original jurisdiction of any civil action in which … any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2).

16. Moreover, under CAFA, this action "may be removed to a district court of the United States in accordance with section 1446 … without regard to whether any defendant is a citizen of the State in which the action is brought." 28 U.S.C. § 1453(b).

17. Minimal diversity exists. The putative class consists of both Hawaii and non-Hawaii citizens. *See* ¶¶ 29-32, *infra*. That alone assures that there are members of the putative class of plaintiffs who are citizens of a State different from any defendant.

18. The named Plaintiffs also includes both Hawaii and non-Hawaii citizens. For example, Plaintiff Steven David Potter alleges that he was "driving through Lahaina" on August 8, 2023. SAC ¶ 30. On information and belief, Mr. Potter is domiciled in, and a citizen of, Oregon.[3] Plaintiff Club Sportswear, Inc. alleges that it leased two retail stores, along with

---

[3] CNN, Lahaina resident had to abandon his car and run toward the ocean as wildfires closed in (Aug. 10, 2023) (reporting that Steven Potter had been planning to move to Hawaii but "has a flight back home to Oregon to be reunited with his wife and five children"), https://www.cnn.com/us/live-news/maui-wildfires-08-10-23/h_51897878755058b966a730610952fc20.

6

an office and warehouse, in Lahaina. *Id.* ¶ 17. On information and belief, Plaintiff Club Sportswear, Inc. is a California corporation with its principal place of business in Costa Mesa, California, and is therefore a California citizen. Plaintiff Tommy Knapp alleges that he "owns a home" in Lahaina. *Id.* ¶ 22. On information and belief, Mr. Knapp (who founded Club Sportswear, Inc.) is domiciled in California, and is therefore a California citizen. Plaintiff Kronser Trust alleges that it owns a condominium in Lahaina. *Id.* ¶ 23. On information and belief, Plaintiffs Paul Kronser and Kristi Lynn Kronser, trustees of the Kronser Trust, are domiciled in California, and therefore the Kronsers and the Kronser Trust are California citizens.

19. Defendants also include both Hawaii and non-Hawaii citizens. For example, the Hawaii Electric entities' principal place of business is in Hawaii. SAC ¶¶ 39-42. Accordingly, Hawaii Electric is a citizen of Hawaii. *See* 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business").

20. Spectrum is not a citizen of Hawaii. Spectrum is a Delaware limited liability company with its principal place of business in Saint Louis, Missouri, and its members are citizens of Delaware, Connecticut, and New York. *See* Rule 7.1 Disclosure Statement; *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("an LLC is a citizen of every state of which its owners/members are citizens"); 28 U.S.C. § 1332(d)(10) (under CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized"); *Lethgo v. CP IV Waterfront, LLC*, 2022 WL 2177125, at *6 (D. Haw. June 16, 2016) ("[C]ourts treat LLCs as unincorporated associations under CAFA, so they are citizens of the states under whose laws they are organized and the states where they have their principal places of business."). On information and belief, Defendant JV Enterprises, LLC also is not a citizen of Hawaii. On

7

information and belief, JV Enterprises, LLC is a limited liability company organized in Idaho with its principal place of business in Idaho Falls, Idaho, and its members, Justin Ken Miller and Valerie C. Miller, are domiciled in Idaho Falls, Idaho.

21. Thus, there is minimal diversity under 28 U.S.C. § 1332(d)(2)(A) because "any member of a class of plaintiffs is a citizen of a State different from any defendant."

**C.     The Amount In Controversy Requirement Is Satisfied.**

22. Under CAFA, the amount in controversy must exceed $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). In a putative class action, the amount in controversy is determined by aggregating the claims of all members of the putative class(es). *Id.* § 1332(d)(6).

23. The amount in controversy exceeds $5 million in the aggregate, exclusive of interest and costs. Plaintiffs seek to recover damages for economic losses, real and personal property damage, personal injuries, and wrongful death on behalf of thousands of putative class members related to the Lahaina Fire. SAC ¶¶ 154-56, 160. Plaintiffs allege that "the cost of rebuilding" alone has been estimated at $5.52 billion. *Id.* ¶ 10. Plaintiffs further allege that in the weeks after the Lahaina Fire, Hawaii Electric's market capitalization "suffered a precipitous decline" from $3.55 billion to around $1.3 billion. *Id.* ¶ 11. Plaintiffs compare their putative classes to the collapse of the Champlain Towers condominium building in Florida in 2021, which resulted in nearly $1.2 billion in settlement funds. *Id.* ¶ 159.

24. Accordingly, although Spectrum denies that Plaintiffs or any putative class members are entitled to recover any amount, the amount in controversy requirement for removal under CAFA is satisfied.

**D.     The Primary Defendants Are Not All State Actors Against Whom The District Court May Be Foreclosed From Ordering Relief.**

25. The Court would lack jurisdiction under CAFA if "the primary defendants [were] States, State officials, or other governmental entities against whom the district court

may be foreclosed from ordering relief." 28 U.S.C. § 1332(d)(5)(A). CAFA's state actor rule "preclude[s] CAFA jurisdiction only when *all* of the primary defendants are states, state officials, or state entities." *Woods v. Standard Ins. Co.*, 771 F.3d 1257, 1263 (10th Cir. 2014) (emphasis added); *see Frazier v. Pioneer Americas LLC*, 455 F.3d 542, 546-47 (5th Cir. 2006) (holding that the state actor rule applies only if "*all* primary defendants [are] states" and that plaintiffs cannot "avoid CAFA jurisdiction by naming a state as a primary defendant in an action largely targeting non-states").

26. In identifying "primary defendants," courts "first assume that all defendants will be found liable." *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1068 (9th Cir. 2019). Courts "then consider whether the defendant is sued directly or alleged to be directly responsible for the harm to the proposed class or classes, as opposed to being vicariously liable or secondarily liable." *Id.* Courts "also consider the defendant's potential exposure to the class relative to the exposure of other defendants." *Id.* Courts do "not treat these considerations as exhaustive or apply them mechanistically. The inquiry is whether a defendant is a principal, fundamental, or direct defendant." *Id.* (cleaned up).

27. Although Plaintiffs have asserted claims against some government entities, not all of the primary defendants are state actors. Plaintiffs have directly sued a variety of private entities alleging that they played a role in causing the Lahaina Fire. *See, e.g.*, SAC ¶¶ 8, 11, 39-42, 45-46, 50-52. Moreover, Plaintiffs allege that the government entities have the capacity to be sued for wilful misconduct, gross negligence, and recklessness pursuant to Hawaii Rev. Stat. § 127A-9. *See* SAC ¶¶ 55-57, 60.

28. Because the numerosity, minimal diversity, and amount in controversy requirements of CAFA are satisfied, and because the state actor rule does not apply, this case is subject to removal to federal court under CAFA.

9

### E. This Matter Is Not A Local Or Home-State Controversy.

29. Although the Lahaina Fire occurred in Hawaii, this matter is not a local or home-state controversy—exceptions to jurisdiction under CAFA, 28 U.S.C. §§ 1332(d)(3)-(4)—because a vast majority of the putative class, as broadly defined by Plaintiffs, does *not* comprise Hawaii citizens. Plaintiffs cannot demonstrate that one-third (let alone two-thirds) of the "Liability Class" comprises Hawaii citizens to invoke the local or home-state controversy exceptions. Plaintiffs would have the burden of establishing that an exception to jurisdiction applies. *See Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1019 (9th Cir. 2007). By raising these issues here, Spectrum is not assuming any burden of proof.

30. According to the 2020 census, Lahaina had a population of approximately 12,700 residents.[4] Roughly 2,000 of those residents are not U.S. citizens,[5] and therefore are not Hawaii citizens.[6] Thus, at most, approximately 10,700 Lahaina residents are potentially Hawaii citizens—if Plaintiffs can establish that they are domiciled in Hawaii and incurred injuries or losses related to the Lahaina Fire.[7]

31. The putative, worldwide class sweeps in tens of thousands of non-Hawaii citizens—due in large part to Maui's status as one of the most popular vacation destinations in the United States and the world. The putative class includes non-U.S. citizens, tourists, longer-term visitors domiciled in other states, out-of-state owners of vacation homes or rental

---

[4] United States Census Bureau, *QuickFacts, Lahaina CDP, Hawaii*, https://www.census.gov/quickfacts/lahainacdphawaii.

[5] United States Census Bureau, *Selected Social Characteristics in the United States, Lahaina CDP, Hawaii*, https://data.census.gov/table/ACSDP5YSPT2021.DP02?g=160XX00US1542950.

[6] *See, e.g.*, *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("To be a citizen of a state, a natural person must first be a citizen of the United States."); *King v. Great Am. Chicken Corp.*, 903 F.3d 875, 879 (9th Cir. 2018) ("It cannot be assumed that all residents … are citizens of the United States.").

[7] *Kanter*, 265 F.3d at 857 (citizenship is determined by "state of domicile, not … state of residence"; "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return.").

10

properties, and out-of-state businesses that owned land or operated in and around Lahaina or otherwise suffered an economic loss because of the fire. For example:[8]

    (a)    Again, approximately 2,000 non-U.S. citizens resided in Lahaina.

    (b)    An estimated 15,000 tourists were vacationing in West Maui, which includes Lahaina, on the day of the Lahaina Fire and therefore may claim to have incurred fire-related losses.[9] As a result of the Lahaina Fire, tourists were evacuated from Lahaina as well as Kaanapali and Kapalua.[10] The historic commercial district in Lahaina averaged approximately 2.1 million tourist visitors per year (which works out to be just under 6,000 tourist visitors per day).[11]

    (c)    Following the Lahaina Fire, additional tourists cancelled pre-planned trips to Maui and therefore may claim to have incurred losses. In August 2023 alone, 88 transpacific flights to Maui were cancelled, representing over 23,000 seats.[12] Since then, airlines have continued to reduce or cancel flights to Maui.[13]

---

[8] These examples are not intended as an exhaustive list of non-Hawaii citizens in Plaintiffs' putative class. Spectrum also does not concede that any member of the putative class has a viable claim under any theory of liability or that any class treatment is appropriate here.

[9] Jake Indurksy, *California Woman Is The Only Tourist Confirmed Killed In Maui Wildfire So Far*, Honolulu Civil Beat (Aug. 24, 2023), https://www.civilbeat.org/2023/08/california-woman-is-the-only-tourist-confirmed-killed-in-maui-wildfire-so-far/.

[10] *Id.*

[11] Jack Witthaus, *Hawaii Wildfires Rip Through Heart of Maui's Commercial District, Killing Dozens, Destroying Property,* CoStar (Aug. 10, 2023), https://www.costar.com/article/1484428056/hawaii-wildfires-rip-through-heart-of-mauis-commercial-district-killing-dozens-destroying-property.

[12] State of Hawaii, Department of Business, Economic Development & Tourism, *Maui Wildfire Impacts Economic Recovery* (Sept. 6, 2023), https://dbedt.hawaii.gov/blog/23-47/ ("Maui Wildfire Impacts").

[13] *See, e.g.*, Silas Valentino, *Maui wants tourists back. But numbers are nosediving, and airlines are now suspending flights*, S.F. Gate (Sept. 14, 2013), https://www.sfgate.com/hawaii/article/maui-tourism-demand-following-fires-2023-18364842.php.

11

(d) Approximately 35% of homes in Maui are purchased by out-of-state buyers.[14] And approximately 50% of homes in Lahaina were renter-occupied.[15] Many of the renter-occupied homes would have been owned and/or occupied by non-Hawaii citizens.

(e) Out-of-state businesses owned land or operated in or around Lahaina or may claim to have been injured as a result of the fire. Some of Lahaina's largest commercial property owners are not Hawaii citizens.[16]

32. Moreover, the alleged primary defendants are not all Hawaii citizens. According to Plaintiffs, Spectrum (a non-Hawaii citizen) is alleged to be a primary defendant. Plaintiffs are suing Spectrum directly, as opposed to alleging vicarious or secondary liability. SAC ¶¶ 5, 8, 129-30, 136.

**REMOVAL IS ALSO PROPER UNDER THE MULTIPARTY, MULTIFORM, TRIAL JURISDICTION ACT**

33. Removal of this action is also proper pursuant to MMTJA because, based on Plaintiffs' allegations in the SAC, this action involves "minimal diversity between adverse parties that arises from a single accident, where at least 75 natural persons have died in the accident at a discrete location." 28 U.S.C. § 1369(a).

34. Minimal diversity exists. *See* ¶¶ 15-21, *supra*; *see also* 28 U.S.C. § 1369(c)(1) (defining "minimal diversity" for the MMTJA).

35. As alleged by Plaintiffs, Plaintiffs' claims arise from a single accident—the Lahaina Fire on August 8, 2023. SAC ¶¶ 2-8, 113. Plaintiffs allege that the Lahaina Fire had a single "Area of Origin" at or around Hawaii Electric Pole Number 7A (*id.* ¶¶ 110, 115-16,

---

[14] *See* Grassroot Institute of Hawaii, *West Maui tourism decision should be individual choice*, (Oct. 11, 2023), https://www.grassrootinstitute.org/2023/10/west-maui-tourism-decision-should-be-individual-choice/.

[15] *See* Maui Wildfire Impacts, *supra* n. 11.

[16] *See, e.g.*, Witthaus, *supra* n. 10 ("One of Lahaina's largest commercial property owners is Westlake Village, California-based real estate investment firm U.S. Realty Partners…. Lahaina also is home to Outlets of Maui, a roughly 147,000-square-foot, open-air shopping mall featuring upscale stores, including Calvin Klein, Coach, Gap, Kate Spade, Ralph Lauren, and Tommy Bahama.").

12

135-39), and that although the Maui Fire Department had declared the fire contained, the fire reignited and quickly engulfed Lahaina. *Id.* ¶¶ 108, 111-14.

36. Plaintiffs allege that at least 75 natural persons died in the Lahaina Fire. SAC ¶ 9 (alleging that "[m]ore than one hundred people" died in the Lahaina Fire).

37. The Lahaina Fire occurred at a discrete location—Lahaina, a small town on the Island of Maui.

38. Moreover, MMTJA applies because "a defendant resides in a State and a substantial part of the accident took place in another State or location, regardless of whether that defendant is also a resident of the State where a substantial part of the accident took place." 28 U.S.C. § 1369(a)(1). The accident—the Lahaina Fire—took place in Hawaii, and Spectrum (a non-Hawaii citizen) resides in another State.

39. MMTJA also applies because "any two defendants reside in different States, regardless of whether such defendants are also residents of the same State or States." 28 U.S.C. § 1369(a)(2). Spectrum (a non-Hawaii citizen) resides in a different State than other Defendants who are Hawaii citizens and have their principal places of business in Hawaii. *See, e.g.*, SAC ¶¶ 39-42, 46.

40. This is not a case where "the substantial majority of all plaintiffs are citizens of a single State of which the primary defendants are also citizens." 28 U.S.C. § 1369(b)(1); *see Passa v. Derderian*, 308 F. Supp. 2d 43, 60 (D.R.I. 2004) ("all plaintiffs" encompasses "all those who have died or suffered injury as a result of the tragedy at issue," not merely the plaintiffs who have filed claims in a particular case).

41. Indeed, the vast majority of potential plaintiffs with claims related to the Lahaina Fire are *not* Hawaii citizens, as illustrated by the broad, worldwide putative class. *See* ¶¶ 29-31, *supra*. Moreover, according to Plaintiffs, Spectrum (a non-Hawaii citizen) is a primary defendant. *See* ¶¶ 26, 32, *supra*.

42. Because the requirements of MMTJA are satisfied, this case is subject to removal to federal court under MMTJA.

\* \* \*

43. Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a) because the Circuit Court of the First Circuit, State of Hawaii is located within the District of Hawaii.

44. Under 28 U.S.C. § 1446(d), this Notice of Removal must be filed within 30 days of service upon Spectrum. Plaintiffs served Spectrum on October 24, 2023. Accordingly, removal is timely.

45. Spectrum is not required to notify or obtain the consent of any other Defendant in this action to remove Plaintiffs' action as a whole under either CAFA or MMTJA. *See, e.g.*, 28 U.S.C. § 1453(b) (CAFA); *Pettitt v. Boeing Co.*, 606 F.3d 340, 343 (7th Cir. 2010) (MMTJA).

46. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon all parties to this action, and a copy is being filed with the Clerk of the Circuit Court of the First Circuit, State of Hawaii.

47. By filing a Notice of Removal, Spectrum does not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue; and Spectrum reserves the rights of all Defendants to assert any defenses or objections to which they may be entitled.

48. Spectrum reserves the right to amend or supplement this Notice of Removal.

WHEREFORE, pursuant to CAFA and MMTJA, Spectrum hereby removes this action from the Circuit Court of the First Circuit, State of Hawaii, to the United States District Court for the District of Hawaii.

Dated: November 14, 2023					CHEE MARKHAM & KATO

By: /s/ *Gregory K. Markham*
GREGORY K. MARKHAM
gmarkham@cheemarkham.com
KEITH K. KATO
kkato@cheemarkham.com
2700 American Savings Bank Tower
1001 Bishop Street
Honolulu, Hawaii 96813
Telephone: (808) 523-0111

MAYER BROWN LLP
BRONWYN F. POLLOCK (*pro hac vice application forthcoming*)
bpollock@mayerbrown.com
JILLIAN C. JOSEPH (*pro hac forthcoming*)
jjoseph@mayerbrown.com
333 S. Grand Avenue, 47th Floor
Los Angeles, California 90071
Telephone: (213) 229-9500

MARK R. TER MOLEN (*pro hac vice application forthcoming*)
mtermolen@mayerbrown.com
MATTHEW C. SOSTRIN (*pro hac vice application forthcoming*)
msostrin@mayerbrown.com
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 782-0600

Attorneys for Defendant Spectrum Oceanic, LLC

757787770